# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ZAINAH HAMMOUD, SHAEFA MOHAMED, | ) | |
| ELEANOR EWALD, ERIC EWALD, | ) | |
| CHERYL DEANDA aka CHERYL FOSTER, | ) | |
| GENO DEANDA, PAULA NEWCOMB, | ) | |
| ROBERT RADFORD, ANDREA ROWE, | ) | |
| GARY ZELONY, ANTHONY CRUMP, ERNEST | ) | Case No.: |
| FOREST, BRANDY GUITERREZ, HENRY | ) | |
| KOPPOE, TIMOTHY PADDEN, SONIA VARGAS, | ) | Hon. |
| JENNIFER WICK, WARREN WICK, CARL NOVAK, | ) | |
| and RICHARD ROBBS, all individual citizens of the | ) | |
| United States and the State of Michigan, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WAYNE COUNTY; WAYNE COUNTY TREASURER | ) | |
| RICHARD HATHAWAY; RAYMOND WOJTOWICZ; | ) | |
| DAVID SZYMANSKI; FELECIA TYLER; CITY OF | ) | |
| DEARBORN; CITY OF GARDEN CITY; ROBERT | ) | |
| MUERY; ALLYSON BETTIS; RANDY WALKER; | ) | |
| CITY OF LINCOLN PARK; BRAD COULTER; CITY | ) | |
| OF WAYNE; LISA NOCERINI; TOWNSHIP OF | ) | |
| REDFORD; TRACY KOBYLARSZ; JSR FUNDING, | ) | |
| LLC; JAMES aka "JIM" BUDZIAK; ENTERPRISING | ) | |
| REAL ESTATE, LLC; MILAN GANDHI; RISHI | ) | |
| PATEL; NANDAN PATEL; HP SNAP INVESTMENT, | ) | |
| LLC; HETAL GANDHI; GLOBAL REALTY, LLC; | ) | |
| RICHARD INGBER; RANCILIO & ASSOCIATES; | ) | |
| RICHARD KOSMACK; KAREN FROBOTTA; and | ) | |
| NANCY JACKSON, | ) | |
| | | |
| Defendants. | | |

1

THE MERIDIAN LAW GROUP
Tarek M. Baydoun (P74551)
Jeffrey Hicks (P74279)
Counsel for Plaintiffs
24513 Ford Rd.
Dearborn, MI 48128
(313) 288-8529 Phone
(866) 308-1217 Facsimile
tbaydoun@meridianlawcounselors.com
jhicks@meridianlawcounselors.com

---

## CLASS ACTION COMPLAINT

NOW COME PLAINTIFFS, on their own behalf, and on behalf of all others similarly situated, by and through attorneys TAREK M. BAYDOUN and JEFFREY HICKS of the MERIDIAN LAW GROUP, and for their Complaint, states as follows:

### PARTIES

1. Plaintiff, ZAINAH HAMMOUD, is an individual, residing in the City of Dearborn, County of Wayne, State of Michigan.

2. Plaintiff, SHAEFA MOHAMED, is an individual, residing in the City of Dearborn, County of Wayne, State of Michigan.

3. Plaintiffs, ELEANOR EWALD and ERIC EWALD, husband and wife, reside in the City of Garden City, County of Wayne, State of Michigan.

4. Plaintiffs, CHERYL DEANDA aka CHERYL FOSTER, and GENO DEANDA, husband and wife, reside in the City of Garden City, County of Wayne,

State of Michigan.

5. Plaintiff, PAULA NEWCOMB, is an individual, residing in the City of Garden City, County of Wayne, State of Michigan.

6. Plaintiff, ROBERT RADFORD, is an individual, residing in the City of Garden City, County of Wayne, State of Michigan.

7. Plaintiff, ANDREA ROWE, is an individual, residing in the City of Garden City, County of Wayne, State of Michigan.

8. Plaintiff, GARY ZELONY, is an individual, residing in the City of Garden City, County of Wayne, State of Michigan.

9. Plaintiff, ANTHONY CRUMP, is an individual, residing in the City of Lincoln Park, County of Wayne, State of Michigan.

10. Plaintiff, ERNEST FOREST, is an individual, residing in the City of Lincoln Park, County of Wayne, State of Michigan.

11. Plaintiff, BRANDY GUITERREZ, is an individual, residing in the City of Lincoln Park, County of Wayne, State of Michigan.

12. Plaintiff, HENRY KOPPOE, is an individual, residing in the City of Lincoln Park, County of Wayne, State of Michigan.

13. Plaintiff, TIMOTHY PADDEN, is an individual, residing in the City of Lincoln Park, County of Wayne, State of Michigan.

14. Plaintiff, SONIA VARGAS, is an individual, residing in the City of Lincoln

Park, County of Wayne, State of Michigan.

15. Plaintiffs, JENNIFER WICK and WARREN WICK, husband and wife, reside in the Township of Redford, County of Wayne, State of Michigan.

16. Plaintiff, CARL NOVAK, is an individual, residing in the City of Wayne, County of Wayne, State of Michigan.

17. Plaintiff, RICHARD ROBBS, is an individual, residing in the City of Wayne, County of Wayne, State of Michigan.

18. Defendant, WAYNE COUNTY, is a Municipal Corporation and maintains its principal place of business at 2 Woodward Ave., Detroit, MI 48226, with a registered agent being the Wayne County Corporation Counsel located at 500 Griswold, Detroit, MI 48226.

19. Defendant, WAYNE COUNTY TREASURER- RICHARD HATHAWAY, is named in his official capacity only. The Treasurer maintains its principal place of business at 400 Monroe, Detroit, MI 48226, with a registered agent being the Wayne County Corporation Counsel located 400 Monroe St., Detroit, MI 48226.

20. Defendant, RAYMOND WOJTOWICZ, former Wayne County Treasurer, also sued in his individual capacity, maintained his principal place of business at 400 Monroe, Detroit, MI 48226, with a registered agent being the Wayne County Corporation Counsel located at 500 Griswold, Detroit, MI 48226.

21. Defendant, DAVID SZYMANSKI, former Deputy Treasurer of Wayne

4

County Treasurer, who maintained his principal place of business at 400 Monroe, Detroit, MI 48226, with a registered agent being the Wayne County Corporation Counsel located at 500 Griswold, Detroit, MI 48226.

22. Defendant, FELECIA TYLER, Department Executive for Wayne County, who maintained her principal place of business at 2 Woodward Ave., Detroit, MI 48226, with a registered agent being the Wayne County Corporation Counsel located at 500 Griswold, Detroit, MI 48226.

23. Defendant, CITY OF DEARBORN, is a Municipal Corporation and maintains its principal place of business at 16901 Michigan Ave, Dearborn, MI 48126, with a registered agent being the Wayne County Corporation Counsel located at 16901 Michigan Ave., Suite 14, Dearborn, MI 48126.

24. Defendant, CITY OF GARDEN CITY, is a Municipal Corporation and maintains its principal place of business at 6000 Middlebelt Road, Garden City, MI 48135.

25. Defendant, ROBERT MUERY, Chief of Police at Garden City Police Department and City Manager for the City of Garden City, maintains his principal place of business at 6000 Middlebelt Road, Garden City, MI 48135.

26. Defendant, ALLYSON BETTIS, sued in her individual capacity City Clerk for the City of Garden City, maintains her principal place of business at 6000 Middlebelt Road, Garden City, MI.

27. Defendant, RANDY WALKER, Mayor for the City of Garden City, maintains his principal place of business at 6000 Middlebelt Road, Garden City, MI 48135.

28. Defendant, CITY OF LINCOLN PARK, is a Municipal Corporation and maintains its principal place of business at 1355 Southfield, Lincoln Park, MI 48146.

29. Defendant, BRAD COULTER, sued in his individual capacity, resides within the geographical jurisdiction of this honorable Court.

30. Defendant, CITY OF WAYNE, is a Municipal Corporation and maintains its principal place of business at 3355 S. Wayne Rd, Wayne, MI 48184

31. Defendant, LISA NOCERINI, sued in her individual capacity, resides within the geographical jurisdiction of this honorable Court

32. Defendant, TOWNSHIP OF REDFORD, is a Municipal Corporation and maintains its principal place of business at 15145 Beech Daly, Redford, MI 48239.

33. Defendant, TRACY KOBYLARSZ, Redford Township Supervisor, maintains her principal place of business at 15145 Beech Daly, Redford, MI 48239.

34. Defendant, JSR FUNDING LLC, a Michigan Limited Liability Corporation, Registered Agent being Richmond Inger and registered location being 32525 Mound Rd., Warren, MI 48092.

35. Defendant, JAMES aka 'JIM' BUDZIAK, sued in his individual capacity, resides within the geographical jurisdiction of this honorable Court.

6

36. Defendant, ENTERPRISING REAL ESTATE LLC, a Michigan Limited Liability Corporation, Registered Agent being Nandan Patel and registered location being 1175 Yarmouth Ct, Canton, MI 48188.

37. Defendant, MILAN GANDHI, sued in his individual capacity, resides within the geographical jurisdiction of this honorable Court.

38. Defendant, RISHI PATEL, sued in his individual capacity, resides within the geographical jurisdiction of this honorable Court.

39. Defendant, NANDEN PATEL, sued in his individual capacity, resides within the geographical jurisdiction of this honorable Court.

40. Defendant, HP SNAP INVESTMENT, LLC, a Michigan Limited Liability Corporation, Registered Agent being Hetal Patel and registered location being 41450 Carmela Ct., Northville, MI 48167.

41. Defendant, HETAL GANDHI, sued in his individual capacity, resides within the geographical jurisdiction of this honorable Court.

42. Defendant, GLOBAL REALTY LLC, a Michigan Limited Liability Corporation, Registered Agent being R Scott Zemans and registered location being 32525 Mound Road, Warren, MI 48092.

43. Defendant, RICHARD INGBER, sued in his individual capacity, resides within the geographical jurisdiction of this honorable Court.

44. Defendant, RANCILIO AND ASSOCIATES, INC., a Domestic Profit

7

Corporation, Registered Agent being Leonard Rancilio and registered location being 15655 W. 11 Mile Rd., Roseville, MI 48066.

45. Defendant, RICHARD KOSMACK, an employee or agent of Defendant RANCILIO & ASSOCIATES, sued in his individual capacity, resides within the geographical jurisdiction of this honorable Court.

46. Defendant, KAREN FROBOTT, an employee or agent of Defendant RANCILIO & ASSOCIATES, sued in her individual capacity, resides within the geographical jurisdiction of this honorable Court.

47. Defendant, NANCY JACKSON, an employee or agent of Defendant RANCILIO & ASSOCIATES, sued in her individual capacity, resides within the geographical jurisdiction of this honorable Court.


## NATURE OF THE CONTROVERSY

48. This action is brought before this honorable court on behalf of a class of all persons who own real Property that was illegally and unconscionably taken by the County of Wayne, Michigan (hereinafter "County"), without required notice and sold to City Defendants and others in an abuse of the right of first refusal ("ROFR") found in General Property Tax Act ("GPTA"), Public Act 206 of 1893, as amended and published in Michigan Compiled Laws ("MCL") 211.78 *et seq*[1].

---

[1] The right of first refusal ("ROFR") is found in MCL 211.78(m).

49. The Plaintiffs seek for themselves, and for the putative class described above, relief and redress from an arbitrary and capricious abuse of power that was not effected by statutory taxation scheme nor legislation, but rather by the transgressions of individuals, acting with reckless disregard for the law, to deceive and ultimately deprive the class of their individual properties, without notice or compensation, in violations of the equal protection, due process and compensation guaranteed by the Constitutions of the State of Michigan and the United States of America.

50. In Michigan, the County, through the office of the Treasurer, is ultimately tasked with collecting delinquent property taxes and after due process, subsequently taking and selling properties within its boundaries when required or authorized to do so by the GPTA. The County is referred to in this process as the Foreclosing Government Unit ("FGU").

51. As detailed in the Counts below, the Defendants abused the law to unjustly take the Plaintiffs properties, and those similarly situated. They are now liable under many legal theories. The Plaintiff's seek equitable and compensatory relief and require this honorable court to enjoin the Defendants from causing further damages, including equitable injunctive relief from potential damages for which there is no adequate remedy at law.

**JURISDICTION AND VENUE**

52. Plaintiffs incorporate by reference all other paragraphs of this Complaint, as if fully set herein.

53. Jurisdiction by this Court over Plaintiffs' constitutional claims is proper pursuant to 28 USC § 1343 and 28 USC § 1331.

54. To the extent necessary, supplemental jurisdiction over any state law claims is proper pursuant to 28 USC § 1367.

55. As additional Class Plaintiffs from other counties are identified, this District will remain the most convenient venue in which all future cases can be considered and consolidated as necessary.

56. Venue is proper in this District pursuant to 28 USC § 1391 and 18 USC 1965(a) because the District is where the Defendants reside, where a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred, and where a substantial part of all properties subject to the action is located.

**ALLEGATIONS OF FACT**

**NOTICE AND DUE PROCESS REQUIREMENTS**

57. As further provided in the GPTA, the forfeiture-foreclosure process begins with the provision of a series of notices declaring tax delinquencies and the extreme ramifications of continued delinquency without redemption: the taking of the property and any equity in it and the subsequent sale of it for varying amounts,

10

many times far in excess of the delinquent taxes and fees. The third party transferees then either turn a handsome profit selling the property again, sometimes to the very person who had it taken, or enjoy the benefit of the equity provided by the delinquent taxpayer.

58. This process has naturally been the subject of widespread scrutiny, and because of the implication of rights designed to "protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy…"[2].

59. A series of notices is required by the GPTA. Under the GPTA, a foreclosing governmental unit shall file a single petition with the clerk of the circuit court of that county listing all property forfeited and not redeemed to the county treasurer under [*MCL 211.78g*] to be foreclosed under [*MCL 211.78k*] . . . Before the hearing on the petition, the foreclosing governmental unit must provide proof of service of the notices required under the statute, as well as proof of the personal visit to the property and publication. The circuit court then must make a series of factual determinations to complete the foreclosure process.[3]

60. The required notice was deliberately and illegally withheld from the Plaintiffs and as many as 800 similarly-situated property owners whose properties were offered by the Treasurer to the Cities in Wayne County.[4]

61. All of these approximately 800 property owners (referred collectively as

---

[2] *Stanley v. Illnois*, 405 U.S. 645, 656
[3] See Real Property Tax Foreclosure Timeline Attached as **Exhibit 12**
[4] Plaintiffs' counsel is in possession of a list of these properties and owners.

"owners"), including all of the Plaintiffs, were deliberately deceived. As detailed in, and illustrated by the affidavits attached as **Exhibit 3**,[5] they were deliberately and intentionally denied the required notice pursuant to statute and binding decisions of the Supreme Courts of the State of Michigan and the United States.

62. The "County Defendants", namely WAYNE COUNTY, WAYNE COUNTY TREASURER, RICHARD HATHAWAY, RAYMOND WOJTOWICZ, DAVID SZYMANSKI, and FELECIA TYLER owe the Plaintiffs and the members of the putative class a solemn and critical duty and public trust. They are duty-bound to notify taxpayers of the impending foreclosures and otherwise ensure that they are afforded the due process guaranteed every citizen by the 5th and 14th Amendments to the U.S. Constitution and Michigan Constitution 1963 Article 1, Section 17.

63. Instead and regrettably, the County Defendants, acting in concert with the City Defendants, Developer Defendants, and Visitor Defendants in furtherance of a conspiracy to reap illegal profits, employed means that could not possibly stem from a desire to actually inform the Plaintiffs and those similarly situated, but rather to deliberately misinform or deceive the Plaintiffs and all similar situated individuals. They deliberately halted notices by first class mail.  In prior years, at least five regularly scheduled mailings to the property owner and property address

---

[5] As of the time of filing, some affidavits have yet to be executed. The Plaintiffs intend to execute those affidavits and amend the Exhibit or otherwise file these executed affidavits.

12

occurred, in addition to personal visits and certified mail. Affidavits and county records reflect the fact that although the five mailings were contemplated for the 2012 delinquency cycle, not a single notice was sent to the Plaintiffs by ordinary first class mail.

64. The Defendants recklessly, knowingly and/or maliciously employed the United States Postal Service ("USPS") certified mail system to engage in a deliberate fraud on the Plaintiffs and the people. In an act of scandalous corruption and undeniable contempt, the County Defendants inexplicably authorized and conducted a certified mailing operation that was nothing better than a malicious fraud. They deliberately caused all of the notices that were supposed to be sent by certified mail to the property addresses of the Plaintiffs to be processed in a manner in which the mailings would neither be delivered nor returned as undelivered. Plaintiffs' counsel have checked the status of over 100 certified mail records by tracking number. The official status on these alleged mailings from the United States Postal Service ("USPS") was reviewed and remains in the Plaintiffs' counsel's possession.  Only a handful, less than 10 of the certified mailings were delivered, all to prior mortgage holders at addresses other than the foreclosed properties.

65. Not a single piece of the approximately 100 certified mail pieces for which tracking numbers were searched, including some that appeared on copies of

13

envelopes with no return address, was delivered to a Plaintiff's property address, despite the fact that the Treasurer's mail log purports to show at least one certified mailing to each of the Plaintiff's foreclosed properties. There is no acceptable excuse for this obvious and deliberate attempt to defraud the people, the Plaintiffs, and the Wayne County Circuit Court into believing that these notices had been sent, but conveniently, in almost all cases, not returned.[6]

66. The notes in the Mail Logs reflect the fact that County Defendants had undeniable knowledge of the fact that this mail was undelivered and unreturned, and inexplicably took no remedial action.

67. They deliberately and knowingly employed "Visitor Defendants" RANCILIO & ASSOCIATES, RICHARD KOSMACK, KAREN FROBOTTA, NANCY JACKSON and others to produce false proof of hundreds of personal visits within several weeks in November, 2015. Not coincidentally, all of the Proof of Personal Visit documents that Plaintiffs have asked for and received thus far reflect the false and fraudulent assertion that a visit was made, the property was occupied, and no one was home. They are all signed and notarized on December 15, 2015 in Wayne County, MI. The Plaintiffs have verified that the pictures that were taken are all years old, and not a single Plaintiff was visited. The chances of this being a coincidence under the circumstances are slim to none.

---

[6] See *Jones v. Flowers* 547 U.S. 220; 126 "When mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property…"

14

## TAKINGS BY RIGHT OF FIRST REFUSAL "ROFR"

68. The exercise of the ROFR by the City Defendants, before the tax auction, and while the Treasurer's television commercials, featuring Defendants RAYMOND WOJTOWICZ and DAVID SZYMANSKI  were repeating the following "I don't want your property", was not only unconscionable, but also illegal because it served no public purpose.

69. If the Plaintiffs are mistaken, and this exercise of the ROFR did serve a public purpose, the exercise could be defined as nothing but a taking of private property for a public purpose, for which the Plaintiffs and all similarly-situated individuals are guaranteed just compensation by the State and Federal Constitutions.

70. This concerted exercise of the ROFR was designed and deliberately orchestrated by and between the Defendants with the express and excusive intent to affect an illegal transfer of valuable, mortgage-free properties, many times for less than 20% of their tax-auction values, to a group of affiliated entities and individuals. This conspiracy was designed and led by Defendants MILAN GANDHI and DAVID SZYMANSKI.

71. These largely working-class and even poor families are now facing imminent evictions from their mortgage-free homes in the cold of winter

72. MILAN GANDHI and other Defendants lobbied County and City officials

intensely. SZYMANSKI, who was second in command at the Treasurer's office under Defendant and former Wayne County Treasurer RAYMOND WOJTOWICZ, was at all times instrumental in ensuring the foreclosures occurred, payment agreements were denied, required notices were intentionally not delivered, and that required personal visits did not actually occur. Defendant FELICIA TYLER, also a senior staff member instrumental in the foreclosure process, was intimately aware of the scheme by which the Plaintiffs and other similarly-situated individuals were intentionally and illegally dispossessed of the record title to their properties.

73. As provided by the GPTA, the ROFR requires the County to offer to transfer the foreclosed property to the State of Michigan for the greater of the fair market value or the "minimum bid", which includes only delinquent taxes, interest, penalties, and fees due on the property together with a prorated cost, per property, for the expenses of administering the sale, including all preparations for the sale.[7]

74. If the State does not purchase the property, the City in which the property is situated may, for a public purpose only, purchase the property by paying the County an amount equal to the minimum bid. If a city, village, or township purchases the property, the minimum bid shall not include any taxes levied by that city, village, or township and any interest, penalties, or fees due on those taxes.[8]

75. If property purchased by a city is sold for an amount in excess of the minimum

---

[7] See MCL 211.78(m)(16)(a)(i) and (ii).
[8] See MCL 211.78(m)(1)

16

bid and all demolition, renovation, improvements, or infrastructure development, at any subsequent sale, the excess amount shall be returned to the delinquent tax property sales proceeds account for the year in which the property was purchased by the city.[9]

76. Plaintiffs counsel have been informed that the County Defendants have not collected and do not intend to collect any amounts due under a subsequent sale by the Developer Defendants, a decision that would cost Wayne County an estimated $16 million in lost revenue in 2015 alone. The failure and refusal by County Defendants to enforce the very clear language of this section of the GPTA and collect any profit, is further evidence of the improper purpose for which the Defendants have used the ROFR, to produce private profit, not to collect tax revenue.

## STATUTORY FORECLOSURE RELIEF AND PAYMENT AGREEMENTS- DISCRIMINATION AND DECEPTION

77. Several payment agreements were made available to various residents in an illegal and arbitrary manner. Plaintiffs do not contest the County Defendants' authority to offer the payment agreements. The agreements are authorized pursuant to MCL 211.78(h) and MCL 211.78(q) *et seq*. Plaintiffs assert and affirm that they and similarly situated individuals were subject to irrational, arbitrary, and illegal discrimination by which they were denied equal access to these payment agreements.

78. MCL 211.78(h) and MCL 211.78(q) *et seq* these sections of the GPTA allow

---

[9] Id.

17

the County to enter into a payment agreement to withhold property from the foreclosure petition, in essence allowing temporary relief from foreclosure for title holders to property experiencing substantial financial hardship. The qualifications for such relief must be recorded as a written policy, adopted by the FGU, and made available to the public.

79. The County Defendants have illegally failed to produce this written policy and other information requested by the Plaintiffs' counsel, despite repeated attempts to collect information pursuant to the Freedom of Information Act ("FOIA").

80. The Defendants deliberately and systematically denied Plaintiffs an opportunity to enter payment agreements that were otherwise made available to thousands of distressed taxpayers. Treasurer staff was trained to deliberately deceive the Plaintiffs and similarly situated individuals into falsely believing they were or would be granted relief and created payment plans and schedules that were intentionally deceptive and potentially defective, as further described herein. As further detailed below, the "City Defendants", namely CITY OF DEARBORN, CITY OF GARDEN CITY, ROBERT MUERY, ALLYSON BETTIS, RANDY WALKER, CITY OF LINCOLN PARK, BRAD COULTER, CITY OF WAYNE, LISA NOCERINI, TOWNSHIP OF REDFORD, and TRACY KOBYLARSZ, took Plaintiffs' properties pursuant to the ROFR for the sole purpose of transferring the value of the properties to private parties, primarily the "Developer Defendants", JSR

18

FUNDING, LLC, JAMES aka "JIM" BUDZIAK, ENTERPRISING REAL ESTATE, LLC, MILAN GANDHI; RISHI PATEL; NANDAN PATEL, HP SNAP INVESTMENT, LLC, HETAL GANDHI; GLOBAL REALTY, LLC, and RICHARD INGBER.

81. As evidenced by the affidavits and the allegations in this Complaint, Plaintiffs were not offered, and were in fact denied beneficial payment agreements that they were otherwise qualified for, and that would have prevented foreclosure.[10]

82. Defendant DAVID SZYMANSKI, acting with and for the benefit of other Defendants, designed Wayne County's payment programs[11], fully understood them, and deliberately crafted payment agreements to deceive, ultimately causing what he referred to as a "default" of the payment agreements- just in time for the transferee defendants to exercise their ROFR in June, 2015. Defendant FELECIA TYLER, and upon information and belief, other Wayne County Treasurer staff members, yet to be named, were instrumental in carrying out this illegal discrimination by denying this relief to the Plaintiffs and similarly situated individuals in furtherance of the conspiracy by the Defendants to illegally take and  transfer the properties to Developer Defendants.

83. The 2012 Class N- 2012 Distressed Owner Occupant Extension ("DOOE")

---

[10] See **Exhibit 13**: Plaintiffs all met these qualifications published on the Treasurer's website, and yet were denied agreements like the sample agreement provided after several requests and attached as  **Exhibit 14**
[11] See **Exhibit 1**: descriptive PowerPoint presentation given by Defendant Szymanski to Treasurers and staff statewide at the meeting of the Michigan Government Finance Officers Association.

Application, which most of the Plaintiffs completed or received in 2015, was the only application for relief available on the Wayne County Treasurer website or otherwise made available to the Plaintiffs. The application very clearly indicates "the available relief is a withholding of the property from the 2014 Foreclosure Petition" (eliminating all possibility of a tax sale in 2015), the applicant is responsible for the payment of all 2012 delinquent taxes and all fees, penalties and interest to be paid in full by December 16, 2015, and that applicants do not have an extension unless you receive an approval letter.[12] The newest version of that application has been posted to the Treasurer's website for 2016. The "Class O – 2013 Distressed Owner Occupant Extension Application" (**Exhibit 5**) appears to be identical to the Class N – 2012 application.

84. All of the Plaintiffs and similarly situated individuals, those who applied and those who did not, met the only eligibility guidelines publicly available, displayed in **Exhibit 5** and **Exhibit 13**.

85. All of the named Plaintiffs qualified for the hardship agreements, owned their home free and clear of any mortgage, and reached out to the County before the tax auction. As detailed in the affidavits attached as **Exhibit 3**, the Plaintiffs were all deliberately misinformed by the Treasurer and staff. Some Plaintiffs were told they had time, and should wait until the week of August 3-7, 2015 to enter into a payment

---

[12] See **Exhibit 4**: 2015 Owner Occupant extension Application (for 2012 delinquent taxes).

20

plan. Plaintiffs were told that they did not qualify for payment plans and were discriminatorily denied access to those plans when it was known that they in fact did. All Plaintiffs were told that their property would not be sold in 2015.

86. Plaintiffs and similarly situated individuals received no notice of the fact that their properties would be taken and no notice of any opportunity to be heard prior to the taking of their property and subsequent transfers. Indeed no constitutionally - adequate effort to notify the Plaintiffs and similarly situated individuals was given by anyone.

87. The Plaintiffs who did not apply for a payment agreement would have applied and paid the required down payment but for the fact that they were misled to believe that they had to wait and return between August 3-7, 2015 or were otherwise ineligible[13]. Indeed, even the Treasurer's website falsely indicates that although new and preferable payment agreements are now available, "those who own and live in their home may be allowed to enter into the IRSPA (explained below) August 3-7)".[14] The deadline for the 2015 application was repeatedly extended by the County in a very public manner, so as to lead residents, including the Plaintiffs, into believing that the County and Treasurer were doing everything they could to avoid foreclosure and keep people in their homes.

88. Several of the Plaintiffs have affirmed that they were similarly misinformed

---

[13] See Affidavits in **Exhibit 3**.
[14] **Exhibit 6**: rendition of Wayne County Treasurer's Website, printed November 11, 2015

by a female staff member at the counter of the Treasurer's office at 400 Monroe St. in the City of Detroit. Upon information and belief, this staff member and others were trained to encourage and/or lie to the Plaintiffs and similarly situated individuals to lead them to believe they would have to return August 3-7, 2015 to apply. If that did not work, they were to then set them up in payment plans that could not possibly be kept.

89.   In at least one instance, a staff member, believed to be Defendant FELECIA TYLER, handwrote this advice on a statement that she prepared for Plaintiff RICHARD ROBBS, on July 31, 2015. Having already entered into a payment agreement on March 6, 2015, and made a payment that was not required prior to March 10. Despite receiving notice, Mr. Robbs learned that his house was still on the foreclosure list. He immediately returned to the Treasurer's office on July 31, 2015 and was told by the staff that he would have to return between August 3rd and 7th. The staff member, believed to be Defendant FELICIA TYLER, then handwrote the same instructions on his tax statement: "Reclaim Property 2012  must be paid in full  est. $2,500   August 3 – 7, 2015   IRSPA -  $560 dep.  $185 monthly".[15] Mr. Robbs returned as instructed and was only then told it was too late and Defendant CITY OF WAYNE already owned his property.

---

[15] **Exhibit 7**: Plaintiff Richard Robbs' Executed Payment Agreement dated March 6, 2015, Tax Receipt dated March 6, 2015 reflecting his "Regular Interest Reduction SPA" or "IRSPA", and Tax Statement dated July 31, 2015 bearing the Treasurer's erroneous and misleading handwritten instructions to return between August 3 – 7, 2015. Mr. Robbs was apparently granted and then arbitrarily denied relief under the payment agreement that was executed on March 6th.

90. Plaintiffs' Counsel have reviewed at least 20 stipulated payment agreements that were either offered or entered into by the Treasurer or Plaintiffs in 2015.[16] The payment agreements, and the amounts listed in each agreement do not amount to the 60% required by June 2nd. Thus, even if the Plaintiffs and similarly situated individuals had all entered into payment agreements, and paid the payments required under the agreement, none of them would have paid 60% of the sum of all of the payments as required by June 2, 2015. This evidence of foul play in the creation of the Payment Agreements is only compounded by the discovery that despite the fact that some of the Plaintiffs did in fact pay more than 60% of the actual TIPF that the County Defendants claimed were due, the Treasurer Defendants still transferred their properties to the City Defendants.

91. Plaintiffs were offered stipulated payment agreements that, if read apart and distinct from the application and conflicting terms in the agreements, appear to be maliciously calculated and drafted, by their very terms, so that they could not possibly be kept, leading to inevitable and intentionally induced "default". The payment agreements require "installment payments which meet the following minimum payment schedule:" The first payment lists the date of the payment, made on the same date of the agreement, and the payment amount, in dollars and as a percentage of the total due in taxes, interest, penalties and fees ("TIPF"). The remainder of the

---

[16] **Exhibit 2**: copies of various payment agreements entered into or offered to Plaintiffs in 2015.

payments were then listed in similar amounts on a monthly basis thereafter, with the final payment due before the deadline that appears on the application page- December 16, 2015. The agreements state very clearly, in bold and the largest font on the page: "**This payplan** (*sic*) **expires on January 2016**". That text appears directly above a delineated rectangular box containing the text "I realize these payments must be made on/before due dates. **Initial:**" followed by the taxpayers initials of acceptance. The agreements then state, in fine print:

> "If Taxpayer has satisfied the minimum payment obligation of 60% of 2012 and prior TIPF by June 2, 2015, the subject property shall be removed from the above Petition of Foreclosure and from the list of properties to be auctioned by the Treasurer in 2015… If Taxpayer has not satisfied the minimum payment obligation of 60% of 2012 and prior TIPF by June 10, 2015, this property will be foreclosed and offered to the State of Michigan, local municipality, county and/or auctioned…Taxpayer hereby waives notice of and period to cure the default. Foreclosure may result in the property being sold and title conveyed by deed from the Treasurer to the auction purchaser at the Treasurer's Auctions in 2015… any right the Taxpayer may have to contest or object… is hereby knowingly and voluntarily waived."

The agreements contained payment amounts that would not, as a percentage of the payments, constitute 60% of the alleged TIPF by June 2, 2015. The relevance of this date of anticipated deficiency and "default" is striking- the Treasurer's office was anticipating the delivery of these homes to the City Defendants in July, 2015, after the deadline for the State to exercise its right of first refusal. The County Defendants were granting payment agreements for thousands of other homeowners who applied in every month of 2015, through the date of the tax auction in September and even

into October, and as promised, removing their properties from the foreclosure process. Simultaneously, the County Defendants' website and staff were telling the Plaintiffs and other similarly situated individuals, that they could and should not apply for the DOOE or IRSPA payment agreements until August 3-7, 2015. The Plaintiffs and similarly situated individuals who were allowed to enter into payment agreements, were given the same application stating that upon approval and payment of the first installment, the County Defendants had removed their property 2015 foreclosure process completely, and that their house would not be sold in 2015.[17]

## AN ILLUSTRATION-
## PLAINTIFF BRANDY GUTIERREZ'S EXPERIENCE

92. Plaintiff BRANDY GUTIERREZ, signed a payment agreement on December 8, 2014 (**Exhibit 8**), at which time she paid $2,070.74, an amount that her agreement suggests was 43% of her total delinquent taxes, interest, penalties and fees, or "TIPF".

93. The sum of all of the payments the Treasurer's staff placed into her agreement is $6,379.74. This total would suggest that her initial payment was only 32.5% of the amount she would pay per the agreement.

94. Documents produced by the Wayne County Treasurer and documents from the United States Postal Service ("USPS") are attached as **Exhibit 9.** An

---

[17] See **Exhibit 12**: rendition of Wayne County Treasurer website referring to applications received before and after March 10, a false "deadline" of March 31 and "income standards". Second page contains assertion that  at 125% of poverty , Exhibit 13

examination of the following facts and similarities in the affidavits of all Plaintiffs foreclose any plausible assertion that under all of these circumstances, the County Defendants satisfied their notice requirements:

The Treasurer asserts that he sent Ms. Gutierrez, Mr. Gutierrez and Bank of New York Mellon three separate envelopes all addressed to Ms. Gutierrez's home at 934 Kings Hwy, Lincoln Park, MI 48146-4206. The envelopes were reported to have contained 2 documents, a "Notice of Property Tax Delinquency" and a "Notice of Show Cause Hearing". Despite the documents produced by the Treasurer, which include handwriting that appears to be initials "GN" and the mailing date "11-21" on the left side of what appears to be an envelope and the same initials and "12-1" handwritten on the right side of the same copies (all three), the USPS has confirmed that it has no delivery information for any of the three mailings. No return address appears on the assumed envelopes. The date on the envelopes and the notices they purportedly contained do not have a precise date, just "November 2014". The "Mail Log" document provided by the Treasurer apparently presumes that the three mailings, which are referred to as "DEC-December Mailing" were "Unclaimed… Addressee abandons or fails to call for mail." The Mail Log also appears to assert as fact that a "Personal Visit" at which something was "Delivered". The writer assumes that this refers to information contained in a document titled "Proof of Personal Visit" apparently filed in Wayne

26

County Circuit Court Case No. 14-007672-CH ("Foreclosure Action"). In this document, Defendant NANCY JACKSON of Defendant RANCILLIO & ASSOCIATES asserts, under penalty of perjury, that she personally visited the subject property on November 13, 2014 at 4:39 pm and was:

> "not able to personally meet with the occupant. A copy of the Notice to Show Cause Hearing and Judicial Hearing Notice and Foreclosure Petition, the Information Sheet, instructions in multiple languages urging the documents be translated, and the FIA sheet were placed in a conspicuous manner on the property and a photograph of the property was taken."

The document appears to be signed by Jackson and notarized by Laura Handy, in the county of Wayne, on December 15, 2014. A picture of the subject property appears in the file, with no date. Another document, titled "PA 123 Notifications" purports to reflect that "Images" exist for a "PVT- Personal Visit on "09/09/2014", and a "M5-December Mailing- Show Cause" on "11/28/2014" for the 2012 tax year. This document also purports to reflect that images exist for a "PVT-Personal Visit" on "10/02/2008" for the 2006 tax year and another visit on "9/23/13" for the 2011 tax year. Other than the highly suspicious and unsuccessful certified mailings and the highly suspicious and doubtful assertion of a personal visit, every other one of the five additional ordinary (uncertified) mailings that were scheduled to be sent for the 2012 tax year were, by the Treasurer's own records, not sent. This lack of notice was an apparent but unexplained departure from the same five notices afforded in prior years. Despite this evidence of a deliberate lack of notice, Ms.

27

Gutierrez attempted to pay more than 60% of the TIPF she owed for the 2012 tax year on the first payment of her agreement (**Exhibit 8**). The staff did some calculation and arbitrarily instructed Ms. Gutierrez to pay $2,070.74 which amounts to 56.5%, just shy of $3,700.03 the total amount due and owing on the "Notice of Property Tax Delinquency". This is the same Notice the Treasurer failed to deliver by certified mail or otherwise and it states that the "Total to Avoid Foreclosure" was $3662.68 "If Paid in December 2014" or $3,700.03 "If Paid In January 2015". $2,070.74 was paid on "December 8, 2014… upon signing this Stipulated Agreement". When Ms. Gutierrez offered to pay more, the staff member told her she had more time, and told her she had until December to pay the balance. Mysteriously, despite the cash payment of $2,070.74 on December 8, 2014, the Tax Payment History Statement produced by the Treasurer reflects two payments that reach that total, on different dates, and the document titled "Property Taxes" only reflects total payment towards 2012 taxes in the amount of $1,462.28. This is likely the result of the retroactive denial of the principal residence exemption ("PRE") for the property, without notice. Despite qualifying as an owner-occupant, upon information and belief, Defendants WAYNE COUNTY TREASURER, RAYMOND WOZJTOWISCZ, DAVID SZYMANSKI, FELICIA TYLER and CITY OF LINCOLN PARK agreed and conspired to retroactively deny Ms. Gutierrez's PRE all the way back to 2010, which created an additional

"delinquency" exceeding $1,260 per year, plus interest, penalties and fees in an intentional attempt to create the conditions for tax foreclosure.[18]  Ms. Gutierrez ultimately received a "Notice to Quit" from Defendant JSR FUNDING, LLC.[19] Shocked and confused, Ms. Gutierrez went to the Treasurer's office with $5,000 cash in hand, more than the erroneously-inflated balance she was told she would have to pay, and was told that her house and been sold to Defendant LINCOLN PARK.[20] Ms. Gutierrez's property, valued at over $80,000, along with 90 other properties in her city alone, was offered by County Defendants to Defendant LINCOLN PARK in a letter on July 2, 2015[21] which included 9 pages of properties and offer prices. County Defendants sent a similar letter to all cities among the City Defendants. The offer price for 934 Kings Hwy., Ms. Gutierrez's beautiful home, was just $5,323.71. Defendant LINCOLN PARK did not exercise it's ROFR until August 4, 2015.

95. The Plaintiffs' counsel have examined all records produced by the County Defendants to each of the Plaintiffs to date, and has confirmed that available files of all Plaintiffs who entered into payment agreements contain the same deceptive

---

[18] **See Exhibit 10**: Public Record data for the property at 934 Kings Hwy reflecting a 0% homestead principal residence exemption for the years 2011-2015. Properties with a PRE are exempt from up to 18 mills of taxation. $18 x $70,000 in taxable value= $1,260. Ms. Gutierrez was entitled to, and did have a homestead exemption until it was mysteriously denied and retroactively reversed, without notice.

[19] **Exhibit 11:** Notice to Quit from Defendant JSR Funding, LLC to Plaintiff Brandy Gutierrez

[20] **Exhibit 18**: 2 documents dated October 6, 2015 that Ms. Gutierrez received after the staff refused to answer questions. Thankfully, another staff member on another floor allowed her to pay for a "Deed certification" just to print her a Tax Statement.

[21] **Exhibit 15**: three-page ltr. From Treasurer to Lincoln Park dated July 2, 2015, and page 9 of the 9 page enclosure.

evidence of fraudulent certified mailings that were intentionally neither delivered nor returned, and fraudulent records, produced by the Visitor Defendants for the County Defendants, of statutorily-required personal visits that never actually occurred. Adding insult to injury, these personal visit documents were accompanied by photographs the Plaintiffs can verify were not taken, as asserted, in 2014, but were rather taken in prior years. The lack of notice was intentional and calculated. This evidence suggests an intentional failure to notify Plaintiffs and all similarly-situated individuals of the existence of a show-cause hearing, a notice of forfeiture, amounts owed, deadlines to pay, and the Treasurer's intention to sell their homes.  Because the County Defendants have thus far failed to fully comply with Plaintiffs' FOIA requests, and have expressed their tendency to withhold information, and fabricate evidence of compliance, the Plaintiffs lack otherwise-available information to identify additional intentional violations of the due process and equal protection rights of the Plaintiffs and similarly situated individuals.

## CAUSES OF ACTION

### COUNT ONE- VIOLATION OF DUE PROCESS
*(Failure to provide a meaningful opportunity to be heard)*

96. Plaintiffs incorporate the preceding paragraphs.

97. It is unconstitutional to deprive a person of their property rights without due process of law. U.S. Constitution Amendment 5; Michigan Constitution 1963

Article 1, Section 17.

98. The County must comply with the GPTA. Whether it complies with the statutes or not, the County, exercising the power of the State, must provide delinquent taxpayers with the minimum due process required by the constitutions of the United States and State of Michigan.

99.The GPTA requires that those subject to losing their property due to delinquent taxes are entitled to no less than two (2) hearings: a show cause hearing and a foreclosure hearing.

100.    The Act requires the show cause hearing to be scheduled for a specific date, place, and time and a delinquent taxpayer is given an opportunity to challenge the foreclosure based on specified legal grounds.

101.    The Counties do not "schedule" an actual "show cause hearing" as required by the Act. Instead, they encourage delinquent taxpayers to contact them to meet outside the confines of a courthouse in the Treasurer's office or at some other location, like massive hearing dates at Cobo Hall, where on different dates in 2015 thousands of delinquent taxpayers were told to attend. At these meetings, the delinquent taxpayer is given, at best, the opportunity to speak to a representative or staff member of the County Defendants. The County Defendants systematically denied the Plaintiff and similarly situated individuals the payment agreements they were otherwise eligible for.

31

102.   These meetings are not conducted in a court house, not recorded or otherwise preserved for appeal, and not overseen by a judge or other neutral arbiter.

103.   Even worst, the Plaintiffs and other owners who were given payment plans that they could not keep, were, upon information and belief, reported as "contested cases" to the Wayne County Circuit Court in March, 2015 in order to keep them paying a bit longer, and their foreclosure hearing and judgment was withheld from the March 20, 2015 hearing, which they were afforded no notice of, and adjourned until June 9, 2015, a day before they were supposed to have paid 60% of their TIPF. They were not given any semblance of a notice of this adjourned date, at which it is believed a judgment of foreclosure was entered. Sadly, according to the payment agreements, the deadline to meet the elusive goalpost of 60% of TIPF was June 10, 2015 in bold lettering on most forms, preceded by June 2, 2015 in finer print. Therefore, if someone had come in to pay on June 10th, the County Defendants would have to sadly inform them that they already had a judgment entered against them, and according to the (defective) waiver language in the agreements, would had already waived the right to notice of this hearing and the right to contest the foreclosure even if they had somehow discovered that a hearing had been scheduled for June 9th. It was easier for the Treasurer Defendants to tell them to come back between August 3-7, 2015 *after* the 21 day statutory appeal period from the June 9, 2015 Judgment (that Plaintiffs

didn't know existed) and after their properties had been made fully available to the City Defendants and Developer Defendants. It is unclear how this foreseeable, calculated and systematic denial of due process to a class of homeowners escaped the wrath of the honorable Wayne County Circuit Court, which had a duty to notify the Defendants, or at least an interest in protecting the interests of justice by ensuring that they were in fact notified.

**COUNT TWO:**
**VIOLATION OF DUE PROCESS**
*(Failure to take additional steps to provide notice)*

104.     Plaintiffs incorporate the preceding paragraphs.

105.     It is unconstitutional to deprive of a person of property without due process of law. U.S. Constitution Article 5; Michigan Constitution 1963 Article 1, Section 17.

106.     The GPTA is intended to provide delinquent taxpayers with the minimum due process recognized by the United States and State of Michigan constitutions. As such, delinquent taxpayers are afforded the right to adequate notice which is reasonably calculated to reach its recipient prior to the Counties taking their property for tax bills that remain unpaid.

107.     Due process requires the government to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

Furthermore, when notice is a person's due, the means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.[22]

108.    An interested party's knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending. Notice by publication is adequate only where it is not reasonably possible or practicable to give more adequate warning. When mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so.[23]

## COUNT THREE:
## VIOLATION OF EQUAL PROTECTION

109.    Plaintiffs incorporate the preceding paragraphs.

110.    The constitutions of United States and the State of Michigan guarantee all persons equal protection under the law. U.S. Constitution, Amendment XIV, Section 1, Michigan Constitution 1963 Article 1, Section 2. The purpose of the equal protection doctrine is to protect against discrimination among similarly situated individuals thereby ensuring they are treated alike.

111.    All property owners, including delinquent taxpayers, have a fundamental right to the equity in their property.

---

[22] *Wayne Cnty. Treasurer v. Perfecting Church* (In re Treasurer of Wayne Foreclosure), 478 Mich. 1, 4, 732 N.W.2d 458, 459 (2007)
[23] *Jones v. Flowers*, 547 U.S. 220, 223, 126 S. Ct. 1708, 1712 (2006)

34

112.     As detailed herein, the County Defendants recklessly, knowingly and/or maliciously engaged in a conspiracy to withhold the required notices and deny payment plans in a manner that was neither lawful nor rational. As a result, the Plaintiffs and similarly situated individuals lost record title to their properties.

113.     Plaintiffs and all similarly situated individuals have been damaged as a direct result of the denial of due process of law by the loss of property rights and value. They are entitled to and respectfully request that this honorable court order injunctive relief, declaratory relief and compensation to remedy these damages.

### COUNT FOUR:
### VIOLATION OF RIGHT TO JUST
### COMPENSATION

114.     Plaintiffs incorporate by reference all paragraphs of this Complaint, as if fully set herein.

115.     A person's property may only be taken for public use in Michigan if the government provides just compensation determined in proceedings in a court of record *before* the taking.[24]

116.     The Plaintiffs and similarly situated individuals, have each lost the entire equity in their homes and properties for nonpayment of delinquent property taxes in an amount that is in almost all cases a small fraction of the value of the property taken.

---

[24] United States Constitution 5th Amendment;  Mich. Const. 1963, Art. 10 sec. 2.

35

117.    The abuses of the GPTA and in particular, the use of the right of first refusal to take the properties, has created an inescapable liability for the cities and the County.

118.    If the properties were taken for a public purpose, which is required by the express language of MCL 211.78(m)(1)[25], then Plaintiffs and similarly situated individuals were and remain entitled to just compensation..

119.    If the properties were taken in an illegal manner, and for the illegal purpose of providing profit to the Developer Defendants, as Plaintiffs have asserted,  then the Plaintiffs and similarly situated individuals are likewise entitled to relief.

120.    If it is found that the properties were *both* foreclosed by county Defendants illegally and yet still taken by the City Defendants for a public purpose, the Plaintiffs are ultimately entitled to relief.

## COUNT FIVE:
## DECLARATORY AND INJUNCTIVE RELIEF

121.    For a myriad of reasons, and otherwise considered individual counts in the formalities of pleadings with particularity, the Plaintiffs are entitled to a judgment declaring that the foreclosures and subsequent transfers and related deeds to the properties were illegal and void, and that they hold title to the properties in

---

[25] Property is offered to the State first for a price equal to the "greater of the minimum bid or its fair market value… If the state elects not to purchase the property… a city… may purchase *for a public purpose*… by payment to the foreclosing governmental unit of the minimum bid." MCL 221.78(m)(1)

fee simple, subject only to the valid tax liens of the cities and the county minus interest and costs unnecessarily incurred. In the alternative, the Plaintiffs and all similarly situated individuals request that the court declare that a taking has occurred and that just compensation is owed by the cities, the county and/or the State of Michigan, and determine the amount of just compensation owed, or order the State to do so.

122.     Contemporaneous with the filing of this Complaint, and in light of the circumstances and the risk of irreparable harm, Plaintiffs, with email notice to identifiable and known counsel for Defendants, will file an *Ex Parte* Motion for a Preliminary Injunction and Permanent Injunction and Temporary Restraining Order to prevent imminent evictions of the Plaintiffs and other similarly situated individuals, who, if denied this relief, could be left homeless in the middle of the winter. Plaintiffs herein incorporate by reference that Motion and Proposed Order.

### COUNT SIX:
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 USC 1961 et seq. / CIVIL CONSPIRACY / CONCERT OF ACTION

123.     Plaintiffs incorporate by reference all other paragraphs of this Complaint, as if fully set herein.

124.     Led by the Developer Defendants, all of Defendants, with the sole exception of the City of Dearborn, were each knowingly and willingly employed

and engaged in an organization that conspired to illegally take Plaintiffs properties. In furtherance of that conspiracy, and acting in concert with one another, the Defendants, with the sole exception of the City of Dearborn, committed various violations of state and federal criminal laws, as further detailed throughout this Complaint. These intentional and criminal violations of law include, but are not limited to the following predicate acts:

a.    Mail fraud, 18 USC 1341: County Defendants and Visitor Defendants repeatedly, systematically and regularly used the USPS certified mail system to defraud the Plaintiffs and similarly situated individuals, the people, and the Circuit Court into believing that they sent notices that they had not in fact sent, to cause the transfer of the properties.

b.    Wire fraud, 18 USC 1343: All of the defendants routinely and regularly used the instrumentalities of interstate communication, including phone lines and email in various ways to further their conspiracy to defraud the Plaintiffs into believing that they had more time to redeem their properties, and that they would not be foreclosed on so that they could take and transfer their properties.

c.    Defendants LINCOLN PARK and BRAD COULTER knowingly and intentionally violated MCL 141.1555, the Charter of the City of Lincoln Park Chap. VI, Sec. 20 and the Home Rule Act MCL, 117.1 et seq. by

violating the bidding requirements and selling a City asset worth over $50,000 by rigging and awarding a non-competitive bid and entering into a contract to acquire and sell properties to Defendant JSR FUNDING, LLC without permission of the State Treasurer and in violation of the City Charter. This criminal misdemeanor was intentionally committed in furtherance of the conspiracy. Defendants JSR FUNDING, LLC, JIM BUDZIAK, DEVELOPER DEFENDANTS, and COUNTY DEFENDANTS are likewise culpable for knowingly assisting and conspiring to commit these criminal acts. This contract was expressly unauthorized by these laws, and was thus entered into *ultra vires*. The contracts and resulting deeds are void and unenforceable (*see* footnote 29).

d.      The County Defendants' violations of the GPTA and the Charter of the County of Wayne, as detailed in this Complaint, except for the current Treasurer, RICHARD HATHAWAY, were intentional and malicious violations of the law. Such intentional violations are prohibited by the Charter of the County of Wayne and defined therein as criminal misdemeanors. These crimes were repeated in a pattern and committed in furtherance of the conspiracy. All of the remainder of the Defendants, except for the CITY OF DEARBORN, are likewise culpable for knowingly assisting and conspiring to commit these criminal acts. The County

Defendants' actions, which included the foreclosure, execution and filing of deeds, and transfer of the properties, were expressly unauthorized by law, and conducted *ultra vires*. Thus, the foreclosures, deeds and transfers of the properties are void and unenforceable.

e.     Defendants GARDEN CITY, RANDY WALKER, ROBERT MUERY and ALLYSON BETTIS intentionally violated several sections of the Charter of the City of Garden City by entering into a contract to purchase and sell real estate without authorization, rigging and awarding a non-competitive bid and entering into a contract to acquire and sell properties to Defendants JSR FUNDING LLC, JIM BUDZIAK, ENTERPRISING REAL ESTATE LLC, MILAN GANDHI, RISHI PATEL, NANDAN PATEL, and GLOBAL REALTY LLC. Additionally, Defendants ROBERT MUERY and all of the Defendants referred to in this paragraph JSR FUNDING LLC, JIM BUDZIAK, ENTERPRISING REAL ESTATE LLC, MILAN GANDHI, RISHI PATEL, NANDAN PATEL conspired to break into properties and enter them without the permission of the owners and trespass onto the lawns and yards of others, in an act of wanton disregard for life and property. Both breaking and entering and trespass are crimes under the Michigan criminal code. Police Chief and City Manager, defendant ROBERT MUERY committed the crime of obstruction of justice when he instructed defendants

RISHI PATEL, MILAN GANDHI  and JIM BUDZIAK to begin making contact with the owners and representing themselves as the owners even though title had not yet transferred. He then went on to instruct them to call the police command desk before they entered the homes, to make sure that police did not respond to calls from concerned residents, and offered his personal cell phone number. These Defendants colluded in a shameless and criminal way. ROBERT MUERY and ALLYSON BETTIS shamelessly lied to the residents and the public and even picked the Developers, gave them the ROFR list and allowed them to decide which of the 17 cherry-picked residential properties to divide amongst them, before the rigged bidding even began. The contracts that they entered into, approximately 2 months prior to the required ordinance approval by the City Council were expressly forbidden by the City Charter, Sec. 5.02(7), and was thus entered into *ultra vires*. The contracts and resulting deeds are void and unenforceable (*see* footnote 29).

f.      Defendants CITY OF WAYNE, and LISA NOCERINI conspired to recommend and award a no-bid contract to Defendants JSR FUNDING LLC, JIM BUDZIAK, GLOBAL REALTY, MILAN GANDHI and RICHARD INGBER in violation of Wayne, Michigan City Ordinance Section 13.01 (c), which is a crime according to 202.99. Because this

41

contract award is expressly forbidden by the City Code and was thus entered into *ultra vires*, the contracts and resulting deeds are void and unenforceable (*see* footnote 29).

g.      Developer Defendants deliberately knew of and requested or approved all of the criminal acts referred to in this count. They were the primary financial beneficiaries of these ongoing illegal activities. They began this pattern prior to the 2014 tax year, albeit on a much smaller scale, in Redford Township. If left unchecked, this enterprise which will continue and expand, according to Defendant MILAN GANDHI, for "years to come".

125.      Defendants JIM BUDZIAK and DAVID SZYMANSKI are described as good friends. Defendants GLOBAL REALTY, RICHMOND INGBER, MILAN GANDHI, JSR FUNDING LLC, NANDAN PATEL,  and RISHI PATEL are now engaged in various capacities with one another and the City Defendants and County Defendants, and they all seem intent on expanding this enterprise and conspiracy.

126.      Injunctive and compensatory relief is properly exercised pursuant to the courts' general equity powers based on the pendant claims. [26]

## COUNT SEVEN:
## GENERAL PROPERTY TAX ACT (GPTA), MCL 211.78, *et seq.*

127.      Plaintiffs restate by reference all of the other paragraphs of this

---

[26] *USACO Coal Co v Carbomin Energy, Inc*, 539 F Supp 807 (WD Ky), *aff'd,* 689 F2d 94 (6th Cir 1982).

Complaint, as if fully set herein.

128.    The notice provisions of the GPTA were intentionally violated by County Defendants as described in Count One.

129.    The Deed Covenants and GPTA require that the City or any subsequent purchaser pay all delinquent taxes upon the exercise of the ROFR or all taxes due upon the date of the deed.[27] These requirements were simply ignored, for no possible beneficiary but the Developer Defendants, who profited more from the lower sale price, at the expense of the Plaintiffs, who now owe the Treasurer more than they otherwise would have, and all of the residents of Wayne County, who do could use the millions of dollars given away to the Developer Defendants.

## COUNT EIGHT:
## HOME RULE CITY ACT- MCL 117.1 et seq.

130.    Plaintiffs restate by reference all of the other paragraphs of this Complaint, as if fully set herein.

131.    Cities and municipal corporations can contract only through the method prescribed by law.[28]

132.    Whether or not the transfers of Plaintiffs' properties to the City Defendants was prohibited by the GPTA, the City Defendants all purchased and/or sold the Plaintiff's properties in violation of their City Charters and ordinances, all

---

[27] **Exhibit 17**- copy of a Wayne County Treasurer Quitclaim Deed containing enforceable conditions subsequent that require the transferee and any subsequent transferees to pay "all tax obligations due on the date the deed is issued".
[28] *Amalgamated Ass'n of St, etc Employees v Detroit*, 330 Mich 195, 212–213, 47 NW2d 70 (1951)

of which were clear and intentional violations of those Charters, Ordinances, and ultimately, the Home Rule City Act, which enables the City Defendants to exercise such powers only as allowed by law.

133.    The doctrine of *ultra vires* must be applied to preclude a city from engaging in a course of conduct where it specifically lacks the authority to do so, and invalidate contracts that were entered into without authorization.[29] Additionally, a court in an appropriate action may examine the facts surrounding the awarding of such a contract and hold that the officials acted arbitrarily and abused their discretion, invalidating those contracts.[30]

134.    As detailed herein, City Defendants illegally bid, purchased and sold the properties in direct violation of City Ordinances and Charter, rendering those contracts and conveyances void and invalid.

## COUNT NINE:
## OPEN MEETINGS ACT- MCL 15.261 *et seq*. ("OMA")

135.    Plaintiffs restate by reference all of the other paragraphs of this Complaint, as if fully set herein.

136.    In furtherance of the conspiracy to take the Plaintiffs homes Defendants GARDEN CITY, RANDY WALKER, ROBERT MUERY, and ALLYSON BETTIS intentionally violated the Open Meetings Act by refusing to

---

[29] Where there was no power to purchase real estate in light of the absence of specific provisions in the annual appropriations bill, *Salzer v East Lansing*, 263 Mich 626, 629–631; 249 NW 16 (1933), affirmed an injunction against such a purchase.
[30] *Bolt v. Muskegon Board of County Road Commissioners*, 1936, 277 Mich. 75, 268 N.W. 817.

allow public comment at the regularly scheduled meeting of the City Council on November 9, 2015.

137.     Upon information and belief, the mayor and a quorum of the City Council continued their meeting at a pizza party shortly thereafter, where they nervously laughed an joked about the distraught Plaintiffs and other residents.

138.     The residents had come to speak about the impending evictions after the City officials, including Defendants ROBERT MUERY, RANDY WALKER, an ALLYSON BETTIS and members of the City Council repeatedly lied to them and told them that the "Neighborhood Stabilization Program" in Garden City would be used as a means to rehabilitate vacant dilapidated properties and after they had told several of the Plaintiffs that no one would be evicting them.

139.     Despite prior caution to these defendants by Plaintiffs' counsel that an opportunity for public comment was required, and that an intentional violation of the OMA is a criminal misdemeanor, the Defendants would not be bothered with the law.

## COUNT TEN:
## FREEDOM OF INFORMATION ACT ("FOIA") - MCL 15.231 *et seq*.

140.     Plaintiffs restate by reference all other paragraphs of this Complaint as if they were full set herein.

141.     Plaintiffs have requested production of documents for inspection in their original forms, and copies of other documents and records in paper and

electronic form.

142.     The County Defendants and Defendants GARDEN CITY, ROBERT MUERY, RANDY WALKER, ALLYSON BETTIS, LINCOLN PARK, and BRAD COULTER have all failed to comply with these requests, in violation of FOIA.

143.     These Defendants' violate FOIA in an attempt to escape further discovery of the shocking, unflattering facts related to their conspiracy.

144.     Defendant ALLYSON BETTIS, acting on behalf of GARDEN CITY, with the approval of co-conspirators, and for their collective benefit, sent Plaintiffs' counsel a bill totaling nearly $500 to produce roughly 550 copies of documents that were readily available. BETTIS charged the Plaintiffs, which she knew to be financially distressed, this inflated cost to selectively redact, without explanation or claim of exemption, sections of the production which were not exempt from disclosure, including telephone numbers contained in signature blocks, in otherwise public email communications, email addresses in public emails.  She also intentionally withheld entire documents from production despite the fact that they were not exempt. These documents include an "opinion letter" from former Attorney General Mike Cox which Defendant MILAN GANDHI sent to GARDEN CITY to "quell any suspicion of wrongdoing" and assert that GARDEN CITY's exercise of the right of first refusal was legal.

46

145.     The County Defendants have thus far failed to respond to the FOIA request sent to them on November 7, 2015. On November 15, 2015, Plaintiffs submitted another FOIA request, seeking among other things:

> "A detailed payment history for all taxes paid on the properties over the past 10 years including, but not limited to, the dates of the payments, the amounts received, and the amounts applied, the checks your amounts were applied to, and the person paying the tax. A copy of each and every payment agreement arrangement, accommodation and/or exemption of any kind that were applied for and/or entered into regarding these properties including the application pageant any and all related records of communications. Any recorded notes made by staff in relation to these properties, including but not limited to, any paper or electronic records in any form. Copies of every tax receipt generated for these properties within the past 10 years. Unedited Excel or other electronic file (emailed to us please info@meridianlawcounselors.com) for the list of all properties in wayne county in any type of payment agreements for each year since January 1, 2012.Unedited Excel or other electronic file (emailed to us please info@meridianlawcounselors.com) for the list of all properties in wayne county offered to the city's pursuant to the "right of first refusal" for each year since January 1, 2012."

146.     On November 25th, 2015, County Defendants sent a response purporting to extend the deadline to produce the records requested on November 15th from December 7 to December 18th, 2015. Despite this extension, the County Defendants have yet to comply. The County was also asked to prepare and send the electronic file, purportedly 7,000 scanned pages, or an excel file of the properties that were included on the 2014 foreclosure petition and the foreclosure judgments that were submitted to the Wayne County Circuit Court prior to the March 20, 2015 foreclosure hearing and judgment and petition submitted to the same Court prior to the June 9, 2015 foreclosure hearing and judgment. These documents are crucially important because they concern the due process that was denied the

Plaintiffs and other similarly situated individuals. County Defendant, through their Attorney, have thus far refused this request.

147.     Defendants LINCOLN PARK and BRAD COULTER arbitrarily and capriciously refused to even respond to the Plaintiffs FOIA requests included in a letter dated November 7, 2015 in which the following information was requested:

"Please identify any documentary evidence of such and produce copies of those records. (property valuations)… a copy of any agreements entered into with the developer as well as any and all emails, letters or other recorded correspondences between the developer and the City and any of its officers and/or agents. a copy of the resolution/ordinance to sell properties) as adopted and a copy of such publication…"

148.     The Plaintiffs are entitled to the immediate production of this information, punitive damages of $500 per request, and actual costs, including attorney fees necessitated by violations of the FOIA.

## CLASS ALLEGATIONS

149.     Plaintiffs restate by reference all other paragraphs of this Complaint as if they were full set herein.

150.     All Plaintiffs and putative class members have suffered and continue to suffer similar harm due to having their property and equity in it taken by the Counties without minimum due process and through intentional discrimination without any rational basis. After not receiving adequate notice or a meaningful opportunity to be heard, the Plaintiffs and class members are then deprived of any

48

just compensation when their property and any equity in it are sold at auction to the highest bidder.

151.   Class Definition. Plaintiff seeks to certify the following class and sub-class:

> All persons who currently owns and occupies or at one time owned and occupied any parcel of real property located within the county of Wayne and who had such real property taken from them by the County and transferred to a City or Township purporting to exercise the right of first refusal in MCL 211.79(m) after they entered into a payment agreement; and

> Subclass. All persons who currently own and occupy or at one time owned  and occupied any parcel of real property located within the county of Wayne and who had such real property taken from them by the County and transferred to a City or Township purporting to exercise the right of first refusal in MCL 211.79(m) and for whatever reason did not enter into a payment agreement.

152.   Numerosity.  The proposed class is so numerous that joinder of all members is impracticable. While the exact number of class members is not now known, Plaintiffs believe the class number is in excess of 1,000 members. These members may be readily identified from County Defendants' own records.

153.   Commonality. There are questions of law or fact common to the members of the class that predominate over questions affecting only individual members.

154.   Among the questions of law or fact common to the class are the following:

49

a) Did the County provide adequate notice of tax delinquencies, hearings, and the impending sale of the property?

b) Did the County take additional reasonable steps to provide adequate notice when they knew their prior efforts had failed?

c) Did the County provide a meaningful opportunity to be heard at their taxpayer assistance meetings and/or are such meetings the equivalent of the show cause hearing required by the GPTA?

d) Even assuming the meetings constitute the show cause hearing, did the Counties schedule them at specific, identifiable, dates and times and thereafter provide a meaningful opportunity for delinquent taxpayers to challenge foreclosure?

e) Did the County or City deny the taxpayers right to equal protection under the law?

f) Does the County, City, or State owe the property owners just compensation after taking and selling the property?

g) Are all or some of the tax payers entitled to relief from damages otherwise caused by the conspiratorial enterprise of the Defendants?

155.    <u>Typicality.</u>   The harm suffered by Plaintiffs is typical of the harm suffered by other class members differing only in amount. Accordingly, the Plaintiffs claims are the same as those of the other class members. Resolution of

these common questions will determine the liability of the Defendants to the Plaintiffs and the class members in general. Thus, the claims properly form the basis for class treatment in this case.

156.    Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all members of the class and at the very least the County Defendants.

157.    <u>Adequacy of Representation.</u>  The represented parties will fairly and adequately assert and protect the interest of the class. Plaintiffs have already vigorously demonstrated their willingness to pursue this litigation on its own behalf, and they have no known conflicts with the remainder of the class members.

158.    The Meridian Law Group is well versed in the facts and substantive law underlying the Plaintiffs' claims having two attorneys with more than 11 years of real estate and general litigation experience.

159.    This class action is maintainable under Federal Rule of Civil Procedure 23(b).

160.    The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

        a) The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with

respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

b)      The prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

161.    The party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final equitable, injunctive or corresponding declaratory and monetary relief is appropriate respecting the class as a whole. Specifically, Defendants have and continue to take property in an abuse of the GPTA and in furtherance of their scheme to take properties from the putative class members and evict them from their homes in violation of law and equity.

162.    The questions of law or fact common to class members predominate over any questions affecting only individual members, and as such a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

163.    The action is and will be manageable as a class action and in fact more manageable than the prosecution of separate actions in various forums and venues.

164.    In view of the complexity and importance of the constitutional issues and expense of the litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

165.    It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

166.    Plaintiff is not aware of any members of the proposed class that have filed similar litigation nor is Plaintiff aware of any pending similar litigation in which the Defendants are defending against similar claims related to this conspiratorial enterprise.

167.    The class action is the appropriate method for the fair and efficient adjudication of the controversy. The legal and factual bases for the Plaintiffs' claims are the same as for the claims of all class members. The only difference between individual claims is the severity of the harm and resulting damages. Adjudicating this case on a class-wide basis will promote substantial judicial economy by eliminating the likelihood of multiple cases hundreds turning on the same questions of law and fact. The class action will also provide the Plaintiffs with the only meaningful avenue for relief, due to the economy of spreading their litigation costs, thereby reducing each individual's expenses over the class and enabling counsel to pursue the litigation by aggregating the claims. Further, the

class action will save the Defendants the burden of defending multiple suits in multiple forums.

## RELIEF REQUESTED

WHEREFORE, on behalf of itself and others similarly situated, the PLAINTIFFS request the following relief:

A.     That this action be determined as proper to be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b), together with an order appointing the named Plaintiffs to represent the class and subclass and certifying Plaintiffs' counsel to represent the class and subclass;

B.     The injunctive and declaratory relief as applicable and specified in Count Five and the Motion For Preliminary and Permanent Injunction and Temporary Restraining Order Filed Contemporaneously with this Complaint, including, but not limited to an Order immediately halting and enjoining any further sales, encumbrances, evictions, proceedings or other actions effecting possession or title to the properties, and declaring the foreclosures, contracts and deed the by which Defendants transferred the properties null and void, and quieting title in the properties in the name of the Plaintiffs, subject only to valid tax liens;

C.     An award of actual damages, treble damages pursuant to RICO, including all applicable interest and attorney's fees, in an amount to be determined at trial;

D.     An award of just compensation, as applicable, in an amount to be determined at trial;

E.     An award of costs of this suit, including reasonable attorney's fees, as provided by 42 USC § 1988, RICO or on other grounds;

F.      An award of an incentive fee to the named Plaintiffs for having the courage to come forward and challenge the GPTA and the manner in which it is administered; and/or

G.      Any other relief as necessary to redress the violation of the Plaintiffs' rights, guaranteed by the Constitution and laws.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims and issues so triable.

Respectfully submitted by:

THE MERIDIAN LAW GROUP
Counsel for Plaintiffs
24513 Ford Rd.
Dearborn, MI, 48128
(313) 288-8529

/s/ Tarek M. Baydoun Esq..
By: Tarek M. Baydoun (P74551)
     Jeffrey R. Hicks (P74279)
tbaydoun@meridianlawcounselors.com
jhicks@meridianlawcounselors.com